IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Case No. 18-po-6712 |
| **DARIUS DREW** | * | |
| **Defendant** | * | |

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on Defendant's Motion to Suppress Evidence (ECF No. 22), the Government's Memorandum of Law—Breath Alcohol Test (ECF No. 24), and Defendant's Supplemental Memorandum Regarding Defendant's Motion to Suppress (ECF No. 23). On April 22, 2019, the Court conducted a hearing on the defendant's motion to suppress. For the reasons stated below, the defendant's motion is **DENIED**.

## BACKGROUND

The sole witness at the hearing, United States Park Police Sergeant Adam Zielinski, testified that on Saturday, August 11, 2018, at approximately 4:00 a.m., he was conducting speed enforcement on the Baltimore-Washington Parkway (the "Parkway"), a federal area maintained by the National Park Service and within the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. § 7(3); *United States v. Smith*, 701 F.3d 1002, 1004 (4th Cir. 2012); *United States v. Rubio*, 87 F.3d 1309, No. 95-5421, 1996 WL 329630, at *1 n.1 (4th Cir. June 17, 1996) (per curiam) (unpublished table decision). While he was monitoring traffic, he observed a vehicle traveling at a high rate of speed. He visually estimated the speed of the

vehicle at 80 miles per hour. The speed limit in that area is 45 miles per hour. Sergeant Zielinski's radar unit registered the speed of the vehicle at 79 miles per hour. After the vehicle passed his location, Sergeant Zielinski pulled onto the Parkway to stop the vehicle. As he followed the vehicle northbound on the Parkway, the vehicle was travelling in the left lane of travel. Sergeant Zielinski observed the vehicle cross into the middle lane of travel and then swerve back into the left lane on six occasions. Sergeant Zielinski was approximately three to four car lengths behind the vehicle when he observed this movement. He testified that there were no obstacles or debris in the road that would have caused the driver to swerve into the middle lane as he observed. Sergeant Zielinski activated his emergency equipment and pulled the vehicle over. He made contact with the driver, Darius Drew, the defendant.

Sergeant Zielinski smelled the odor of alcohol coming from the interior of the defendant's vehicle. The defendant admitted that he had consumed one beer. He stated that he was on his way to pick up his wife whose car had broken down. Sergeant Zielinski noticed that the defendant's speech was slurred and that he had red, bloodshot, and watery eyes. Believing that the defendant was under the influence of alcohol, Sergeant Zielinski advised the defendant that he needed to step out of the vehicle so that he could conduct field sobriety tests. The defendant complied without objection. After the defendant stepped out of his vehicle, Sergeant Zielinski administered three field sobriety tests: the horizontal-gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test. Sergeant Zielinski testified in detail as to the defendant's performance on the tests. At the conclusion of the field sobriety tests, the defendant submitted to a roadside breath test, which revealed the presence of alcohol. At that point, Sergeant Zielinski placed the defendant under arrest and transported him to the United States Park Police District Four Station.

At the station Sergeant Zielinski advised the defendant of his rights regarding the administration of a breath test to determine his blood alcohol level pursuant to 36 C.F.R. § 4.23. Sergeant Zielinski gave the defendant a written copy of the testing notice for his review and read the notice to the defendant.[1] In the course of advising the defendant of his rights regarding the breath test, Sergeant Zielinski made several ancillary statements to the defendant. He testified that he tells people it is in their interest to cooperate; that they can be charged with a crime if they do not cooperate; that, if they cooperate, he will work with them and they could get out that night; that he has the ability to seek a warrant; and that, if they do not cooperate, they could be held over the weekend until they see a magistrate judge. Sergeant Zielinski testified that these statements were part of the conversation he had with the defendant before the administration of the breath test. After reading the testing notice to the defendant and making these statements to the defendant, the defendant signed the testing notice indicating his consent to the breath test. Sergeant Zielinski then administered the breath test after the completion of a twenty-minute observation period. After the breath test and administrative processing were completed, Sergeant Zielinski issued the defendant several violation notices charging him with, among other things, operating a motor vehicle under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1), and with operating a motor vehicle with a breath alcohol concentration ("BAC") of .08 or above, in violation of 36 C.F.R. § 4.23(a)(2).

## DISCUSSION

**A.     Field Sobriety Tests**

In his motion to suppress, the defendant first challenges the admissibility of the results of the field sobriety tests. The defendant argues that Sergeant Zielinski lacked the requisite legal

---

[1] The defendant does not dispute the written testing notice's accuracy or its reading by Sergeant Zielinski.

justification to subject the defendant to the field sobriety tests. The Court disagrees. A law enforcement officer may require a driver to participate in field sobriety tests if the officer has a reasonable suspicion that the driver is under the influence of alcohol. *Leon v. Summit County*, 755 F. App'x 790, 794 (10th Cir. 2018); *Bradley v. Reno*, 632 F. App'x 807, 810-11 (6th Cir. 2015); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206 (10th Cir. 2008); *Rogala v. District of Columbia*, 161 F.3d 44, 52 (D.C. Cir. 1998); *Burno-Whalen v. State of Maryland*, No. GJH-15-564, 2016 WL 1259556, at *6 (D. Md. 2016) (citing, *inter alia*, *Blasi v. State*, 893 A.2d 1152 (Md. Ct. Spec. App. 2006)). Here, Sergeant Zielinski had a reasonable suspicion that the defendant was under the influence of alcohol based on his observations of (1) the defendant's speed and crossing back and forth between lanes; (2) the odor of alcohol coming from the defendant's vehicle; (3) the defendant's admission that he had consumed alcohol; and (4) the defendant's slurred speech and red, bloodshot, and watery eyes. *See Leon*, 755 F. App'x at 794-95; *Vondrak*, 535 F.3d at 1207 (citing cases); *Amundsen v. Jones*, 533 F.3d 1192, 1200 n.4 (10th Cir. 2008) (citing cases); *United States v. Caine*, 517 F. Supp. 2d 586, 588-90 (D. Mass. 2007); *United States v. Frantz*, 177 F. Supp. 2d 760, 763-64 (S.D. Ohio 2001). Therefore, Sergeant Zielinski was justified in requiring the defendant to perform field sobriety tests.

**B.     Breath Test Results**

The defendant next challenges the admissibility of the breath test results. The defendant argues that the ancillary statements made by Sergeant Zielinski to the defendant in the course of advising the defendant of his rights in regard to the breath test rendered the breath test unreasonable for Fourth Amendment purposes.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

4

violated." U.S. Const. amend. IV. Thus, "[t]he Fourth Amendment prohibits only *unreasonable* searches." *Grady v. North Carolina*, 135 S. Ct. 1368, 1371 (2015) (per curiam). With limited exceptions, warrantless searches are presumptively unreasonable. *United States v. Karo*, 468 U.S. 705, 717, 104 S. Ct. 3296, 3304 (1984). Exceptions to the Fourth Amendment's warrant requirement include consent, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973), search incident to a lawful arrest, *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009), and exigent circumstances, *Mincey v. Arizona*, 437 U.S. 385, 393-94, 98 S. Ct. 2408, 2414 (1978).

The Fourth Amendment applies to a breathalyzer test. *Maryland v. King*, 569 U.S. 435, 446, 133 S. Ct. 1958, 1969 (2013) (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616, 109 S. Ct. 1402, 1413 (1989)). Thus, a warrant would presumptively be required before a breath test could be administered, unless an exception to the warrant requirement applies. It is undisputed that Sergeant Zielinski did not seek a warrant before administering the breath test to the defendant. However, in this case, two exceptions to the warrant requirement are implicated—search incident to a lawful arrest and consent.

A breath test may be administered as a search incident to a lawful arrest for drunk driving. *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2185 (2016). Breath tests are unique, however. To administer lawfully a breath test and obtain the breath sample, the police not only have to establish a legal justification for the test (a warrant or the existence of an exception to the warrant requirement) but also obtain the cooperation of the suspect in giving a breath sample. Even when lawful grounds for the administration of a breath test exist, a DUI arrestee has the physical capacity to thwart the search by simply refusing to blow into the instrument. As the Supreme Court noted in *Birchfield*,

[m]easurement of BAC based on a breath test requires the cooperation of the person being tested. The subject must take a deep breath and exhale through a mouthpiece that connects to the machine. Typically the test subject must blow air into the device "'for a period of several seconds'" to produce an adequate breath sample, and the process is sometimes repeated so that analysts can compare multiple samples to ensure the device's accuracy.

Modern breath test machines are designed to capture so-called "deep lung" or alveolar air. Air from the alveolar region of the lungs provides the best basis for determining the test subject's BAC, for it is in that part of the lungs that alcohol vapor and other gases are exchanged between blood and breath.

When a standard infrared device is used, the whole process takes only a few minutes from start to finish. Most evidentiary breath tests do not occur next to the vehicle, at the side of the road, but in a police station, where the controlled environment is especially conducive to reliable testing, or in some cases in the officer's patrol vehicle or in special mobile testing facilities.

*Id.* at 2168 (citations omitted). For this reason, all 50 states have enacted implied-consent laws to secure the cooperation of DUI suspects in the administration of a breath test. *Id.* at 2168-69; *Missouri v. McNeely*, 569 U.S. 141, 161, 133 S. Ct. 1552, 1566 (2013).

The Federal Government also has enacted implied-consent laws, two of which apply in this case. Title 36 C.F.R. § 4.23 provides:

(a) Operating or being in actual physical control of a motor vehicle is prohibited while:

(1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or

(2) The alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath. Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.

(b) The provisions of paragraph (a) of this section also apply to an operator who is or has been legally entitled to use alcohol or another drug.

(c) Tests.

> *(1) At the request or direction of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section, the operator shall submit to one or more tests of the blood, breath, saliva or urine for the purpose of determining blood alcohol and drug content.*
>
> *(2) Refusal by an operator to submit to a test is prohibited and proof of refusal may be admissable [sic] in any related judicial proceeding.*

(3) Any test or tests for the presence of alcohol and drugs shall be determined by and administered at the direction of an authorized person.

(4) Any test shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use.

(d) Presumptive levels.

(1) The results of chemical or other quantitative tests are intended to supplement the elements of probable cause used as the basis for the arrest of an operator charged with a violation of paragraph (a)(1) of this section. If the alcohol concentration in the operator's blood or breath at the time of testing is less than alcohol concentrations specified in paragraph (a)(2) of this section, this fact does not give rise to any presumption that the operator is or is not under the influence of alcohol.

(2) The provisions of paragraph (d)(1) of this section are not intended to limit the introduction of any other competent evidence bearing upon the question of whether the operator, at the time of the alleged violation, was under the influence of alcohol, or a drug, or drugs, or any combination thereof.

36 C.F.R. § 4.23 (emphasis added). Section 4.23(c)(2) is a substantive offense. *United States v. Francisco*, 413 F. App'x 216, 219 (11th Cir. 2011) (per curiam) (citing *United States v. Brown*, 364 F.3d 1266, 1268-69 (11th Cir. 2004)). Indeed, a person can be charged under § 4.23(c)(2) with refusal and face a penalty of up to six months' incarceration and/or a fine of up to $5,000.00. 18 U.S.C. §§ 19, 3559(a)(7), 3571(b)(6); 36 C.F.R. § 1.3(a).

Also applicable is Title 18 U.S.C. § 3118, which provides:

> **(a) Consent.**--*Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction.* The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.
>
> **(b) Effect of Refusal.**--*Whoever, having consented to a test or tests by reason of subsection (a), refuses to submit to such a test or tests, after having first been advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States during the period of a year commencing on the date of arrest upon which such test or tests was refused*, and such refusal may be admitted into evidence in any case arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction. Any person who operates a motor vehicle in the special maritime and territorial jurisdiction of the United States after having been denied such privilege under this subsection shall be treated for the purposes of any civil or criminal proceedings arising out of such operation as operating such vehicle without a license to do so.

18 U.S.C. § 3118 (emphasis added).

DUI arrestees, therefore, face a difficult choice—cooperate in the administration of the breath test and, thus, provide evidence of blood alcohol content or refuse to cooperate and suffer the consequences, which could include being criminally charged with a test refusal. The Supreme Court has made it clear that, "while the choice to submit or refuse to take a chemical test 'will not be an easy or pleasant one for a suspect to make,' the criminal process 'often requires suspects and defendants to make difficult choices.'" *State v. Brooks*, 838 N.W.2d 563, 571 (Minn. 2013) (quoting *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 923 (1983)).

The existence of an exception to the warrant requirement excuses law enforcement officers from obtaining a judicial warrant before searching an individual or place. However, once authorized (by judicial warrant or the existence of an exception), the manner in which law enforcement conducts the search must also pass constitutional muster. "A search or seizure lawful at its inception may violate the Fourth Amendment if the government agents act unreasonably in the way they carry it out." *State v. Perkins*, 415 P.3d 460, 470 (Kan. Ct. App. 2018) (Atcheson, J., concurring) (citing *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 1699 (1985); *Williams v. City of Cleveland*, 771 F.3d 945, 950-51 (6th Cir. 2014); *United States v. Edwards*, 666 F.3d 877, 883-84 (4th Cir. 2011)), *review granted* (June 27, 2018). "The constitutionality of the means depends upon the typical totality-of-the-circumstances assessment." *Id.*

There are limits on what the government agent may say and do to obtain a DUI arrestee's cooperation in the administration of a breath test. Clearly the government agent cannot use force or the threat of force to obtain cooperation. He could not draw his service revolver and threaten to shoot the arrestee if he did not cooperate. He could not threaten to tase the arrestee. Without question, such acts or acts similar to them would cross the line of unreasonableness. Additionally, trickery, deceit, or misrepresentations would cross the line. A government agent may not misrepresent the lawful consequences that the arrestee faces if he refuses to cooperate. Alternatively, a government agent may not promise benefits to the arrestee if he cooperates that he has no authority or means to deliver.

Here, the defendant asserts that the ancillary statements made by Sergeant Zielinski to the defendant in the course of advising him of his breath test rights crossed the line, rendering the manner in which his cooperation was obtained constitutionally unreasonable. The defendant is

particularly offended by Sergeant Zielinski's statement that, if the defendant cooperated, Sergeant Zielinski would work with him and he could be released that evening, but that, if he did not cooperate, he could be detained over the weekend until presented before a magistrate judge on Monday morning for an initial appearance. The Court notes at the outset that there has been no evidence that, but for these statements, the defendant would not have cooperated in the administration of the breath test. Further, the defendant has not asserted that anything Sergeant Zielinski stated was false. Indeed, cooperation with the breath test could lead to the prompt release of a DUI arrestee. The entire process (assuming no complications) takes approximately thirty minutes. As Sergeant Zielinski testified, there is first a twenty-minute observation period during which an arrestee is observed to ensure he is not burping, eating, or doing anything else that could create the presence of alcohol in the mouth before testing. At the conclusion of the observation period, the arrestee is requested to give two breath samples. On the other hand, if an arrestee does not cooperate, the police may seek a warrant for a blood draw. That process will undoubtedly take significantly more time, delaying the arrestee's release. The police first will contact the Assistant United States Attorney for approval. A magistrate judge then must be contacted and approve the warrant. Assuming the warrant is approved, the arrestee will then be transported to a hospital for the blood draw. Depending on the proximity of the hospital to the police station and the availability of hospital staff to draw the blood, a significant amount of time could pass before the blood is drawn. The arrestee then will be transported back to the police station for further processing and release. Therefore, in the typical case, the release of a DUI arrestee who refuses to cooperate with a breath test will be delayed when compared to one who cooperates.

The police must be mindful, however, that the timing of a DUI arrestee's release from custody is in no way related to his decision to cooperate or refuse to cooperate with a breath test, and it would be unfairly deceptive for the police to imply otherwise. The penalties for refusing to cooperate in the administration of a breath test are set forth in the applicable implied-consent statutes. Delaying the normal release of a DUI arrestee is not one of them. In the typical DUI case, upon arrest, the arrestee is transported to the police station for processing, fingerprinting, and breath/blood testing. At the end, he is issued citations and released. Depending on the arrestee's level of sobriety, he may be released to the custody of a family member or friend. In some cases, however, the police may detain the arrestee until his appearance before a magistrate judge. The arrestee may have a history of DUI convictions or convictions for other serious driving offenses. He may have a history of failing to appear for court proceedings. Further, the police may believe he would be a danger to the community if released because of his level of intoxication, his conduct and demeanor, or the presence of other circumstances existing during the incident for which he was arrested. It may be a case where it would be appropriate for the arrestee to appear before a magistrate judge for the setting of conditions of release. These considerations, however, are not related to whether the arrestee cooperated with breath testing.

Here, the Court does not find that the ancillary statements made by Sergeant Zielinski crossed the line of unreasonableness. Nothing he said was patently untrue. He advised the defendant that, if he cooperated, he would work with him and the defendant could be released that night. That is not an untrue statement. But, it is also possible that the defendant could be released that night if he did not cooperate. He advised the defendant that, if he did not cooperate, he could be detained over the weekend. That also is not an untrue statement. But, it is also possible that the defendant could be detained over the weekend even if he did cooperate.

Clearly, the police have an interest in having DUI arrestees submit to breath testing. Compared to a blood draw, a breath sample will be obtained closer in time to the arrestee's driving, giving a better reading of his blood alcohol content at the time of driving. Also, submitting to a breath test at the police station eliminates the time and effort necessary to seek a judicial warrant and to transport the arrestee to a hospital. Had Sergeant Zielinski advised the defendant that he "would" (instead of "could") be released that night if he cooperated with the breath test but that if he did not cooperate he "would" (instead of "could") be detained over the weekend, the Court would find the search process crossed the line of unreasonableness. Because he couched his statements in more indefinite terms, the Court finds that the search did not cross the line. This is a close case, and government agents seeking a DUI arrestee's cooperation with a breath test are cautioned not to imply that the arrestee will suffer consequences for refusing to cooperate in addition to those set forth in the applicable implied-consent statutes. For these reasons, the defendant's motion to suppress the results of the breath test is **DENIED**.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion to Suppress Evidence (ECF No. 22) is **DENIED**.

Date: June 13, 2019

/s/
Thomas M. DiGirolamo
United States Magistrate Judge